IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Criminal Action No. 19-cr-00144

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ANDREW RAPHAEL REESE,

    Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

This matter is before the Court on Defendant Andrew Raphael Reese's Motion to Suppress Evidence. (Doc. # 30.) The Motion has been fully briefed (Doc. ## 42–44), and the Court held an evidentiary hearing on the Motion on September 13, 2019. Based on the following reasons, the Motion is denied.

### I.     BACKGROUND

Defendant was arrested on March 19, 2019, while the Denver Police Department was conducting a narcotics operation in Denver, Colorado. During the operation, the police utilized the assistance of a confidential informant ("CI") as well as surveillance technology. While the police were conducting the operation, Defendant arrived with several female associates.

The police recognized Defendant, and they were aware that Defendant had previously been involved in drug-related activity. The police observed as Defendant and

his associates walked down the sidewalk where the CI was located. After Defendant and one of the females engaged in a covert exchange of an object, the CI made contact with that female. The two of them communicated while Defendant continued to walk down the sidewalk. Subsequently, the CI and female caught up with Defendant, and the CI and female engaged in what was later confirmed to be a drug transaction while Defendant stood nearby. The female then stood in close proximity to Defendant.

After receiving confirmation from the CI that he had engaged in a drug transaction with Defendant's female associate, the police decided to detain Defendant as well as his female associate. The police placed Defendant in handcuffs and searched him. During the course of the search, the police discovered a handgun in Defendant's possession.

Defendant was subsequently charged by indictment with a single count of possession of a firearm and ammunition by a prohibited person in violation of 18 U.S.C. § 922(g)(1). (Doc. # 1.)

## II.     **DISCUSSION**

Defendant's Motion challenges both his initial detention by the police and the subsequent search of his clothing. The Court will analyze each event in turn.

### A.     **DEFENDANT'S INITIAL DETENTION BY POLICE**

Assuming, *arguendo*, that Defendant's initial detention constitutes an arrest as opposed to an investigatory stop,[1] the Court finds that there was probable cause to

---

[1] The Court emphasizes that it is not deciding that Defendant's initial stop was, in fact, an arrest. Rather, the evidence in the record strongly supports the conclusion that law enforcement executed a valid investigatory, or "*Terry*," stop. Specifically, Sergeant Foster—the officer in

2

support the arrest.

1. Legal Standard

The Fourth Amendment protects the right of individuals to be free from improper arrest and detention. U.S. CONST. amend. IV. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed," *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004), and the "validity of the arrest does not depend on whether the suspect actually committed a crime." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). "[W]hen an officer has probable cause to believe a person committed even a minor crime in his

---

charge of the investigation—did not order for Defendant to be immediately arrested. On the contrary, Sergeant Foster testified that he ordered Defendant to be detained so that officers could determine the extent of his involvement in the suspected crime. Sergeant Foster's account is supported by the transcript of the police communications during the investigation. Further, the officers who executed the stop testified that they understood Sergeant Foster's command to mean that they should detain Defendant to investigate his involvement and ascertain whether he was carrying any weapons. Additionally, the officers testified that they were aware that Defendant had been involved in prior gun-related offenses, and they believed a pat-down was necessary for purposes of officer safety. *See, e.g.*, *United States v. Garcia*, 751 F.3d 1139, 1145 (10th Cir. 2014) ("An officer's knowledge of past criminal conduct is probative of whether the defendant is armed and dangerous, especially if a weapon was involved."). Therefore, because the officers' stop and subsequent pat-down were consistent with a valid investigatory stop, the officers' actions were constitutional because they were supported by a reasonable suspicion of criminal activity. *United States v. Rodriguez*, 739 F.3d 481, 485 (10th Cir. 2013) (noting that "[r]easonable suspicion is a particularized and objective basis for suspecting the person stopped of criminal activity," and "[t]he circumstances necessary to arouse reasonable suspicion fall 'considerably short of satisfying a preponderance of the evidence standard.'" (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). Nevertheless, out of an abundance of caution, the Court analyzes Defendant's encounter with law enforcement as if it were an arrest because the facts supporting law enforcement's decision to detain Defendant satisfy the more demanding probable cause standard.

3

presence, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable." *Virginia v. Moore*, 553 U.S. 164, 171 (2008).

Probable cause to arrest exists where, "under the totality of the circumstances," a "reasonable person" would believe "that an offense has been . . . committed" by "the person arrested." *United States v. Munoz–Nava*, 524 F.3d 1137, 1144 (10th Cir. 2008) (quotation marks omitted). As the standard itself indicates, probable cause does not require metaphysical certitude or proof beyond a reasonable doubt. Rather, "probable cause is a matter of probabilities and common sense conclusions, not certainties." *United States v. Biglow*, 562 F.3d 1272, 1280 (10th Cir. 2009) (internal quotation marks omitted). Thus, "[p]robable cause only requires a probability of criminal activity, not a prima facie showing of such activity." *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007). At the same time, probable cause requires more than mere suspicion that unlawful activity is afoot. *See, e.g.*, *Munoz-Nava*, 524 F.3d at 1144 (quotation marks omitted).

2. Analysis

In the instant case, the following factual circumstances were relevant to law enforcement's decision to detain Defendant:

- The police were surveilling a specific city-block with the assistance of a CI due to complaints that numerous illegal drug transactions were occurring in that area;

- Defendant arrived in the area accompanied by several female associates;

- Defendant was known to police due to his prior participation in drug-related activity;

- Officer Hamel testified that, based on her experience, Defendant's conduct with the group of females was consistent with behavior of teams that work together to

- execute drug transactions. She further testified that it was notable that Defendant and his associates parked in the area but did not enter any of the businesses.

- Sergeant Foster testified that he observed Defendant's conduct with the surveillance technology that was being used during the investigation. Specifically, Sergeant Foster witnessed Defendant covertly slip his female associate an object immediately before the female executed the drug transaction with the CI. He testified:

  I observed [the female and the defendant] actually stop at one point . . . next to the McDonald's right there in the 500 block of East Colfax, [Defendant] stopped with his back to the McDonald's, and the female stopped next to him, you could tell there was some exchange, [and] I noted that [over the radio] . . . .

- Based on his experience, Sergeant Foster recognized the exchange to be consistent with strategies that are commonly employed in drug trafficking. He testified:

  I've actually [investigated drug crimes] for 19 years out here, [and] that is normally what is common . . . one person may have the drugs they hand [them] over to one individual to do the actual transaction, [and] they receive the money back—some other person does what they call the "dirty work."

- The CI engaged in a drug transaction with the female to whom Defendant covertly slipped an object;

- The female subsequently stood in close proximity to Defendant;

- The CI made contact with the police and informed them that the exchange between the female and the CI was, in fact, a drug transaction.

Considering the totality of the circumstances, a reasonable person would have a substantial basis to believe that Defendant engaged in criminal conduct. Most notably, the police were engaged in an active narcotics investigation, and they observed Defendant slip his female associate an object immediately before the female engaged in

5

a drug transaction with the CI.[2] The police then observed Defendant's associate stand in close proximity to Defendant after exchanging drugs for money. The probability that the interaction between Defendant and his associate was criminal in nature is bolstered by law enforcement's familiarity with Defendant's past drug-related activity[3] and Defendant's apparent use of a common drug trafficking strategy. Therefore, based on the totality of the circumstances, probable cause existed for the police to arrest Defendant.

**B.    COLLECTIVE KNOWLEDGE**

In his Reply, Defendant argues—for the first time—that the collective knowledge doctrine precludes a probable cause determination based on information that some, but not all, officers knew at the time of Defendant's arrest. (Doc. # 43 at 3.) The Court disagrees.

1.    Legal Standard

"Under the collective knowledge doctrine, the officer who makes a stop or conducts a search need not have reasonable suspicion or probable cause." *United States v. Pickel*, 863 F.3d 1240, 1249 (10th Cir. 2017). "Instead, the reasonable

---

[2] Despite Defendant's assertions to the contrary, it is not reasonable to assume that the police only saw what they narrated during the investigation—i.e., what is reflected in the transcript of law enforcement's communications. As Detective Hamel testified, radio air time is important: "You air what is necessary." Officers do not need to narrate the specific behavior of the subject of an investigation or why they think someone stands out as a possible subject. Defendant has not cited any authority suggesting otherwise.

[3] "[C]riminal history, combined with other factors, can support a finding of reasonable suspicion or probable cause." *United States v. Artez*, 389 F.3d 1106, 1114 (10th Cir. 2004) (citing *United States v. West*, 219 F.3d 1171, 1179 (10th Cir. 2000); *United States v. Myers*, 106 F.3d 936, 939 (10th Cir.1997); *United States v. McCranie*, 703 F.2d 1213, 1218 (10th Cir.1983)).

suspicion or probable cause of one officer can be imputed to the acting officer." *Id*. There are two types of collective knowledge—horizontal and vertical.

Under the **horizontal** collective knowledge doctrine, "a number of individual officers have pieces of the probable cause or reasonable suspicion puzzle, but no single officer has sufficient information to satisfy the necessary standard." *United States v. Latorre*, 893 F.3d 744, 753 (10th Cir. 2018) (citation omitted). In such situations, "the court must consider whether the individual officers have communicated the information they possess individually, thereby pooling their collective knowledge to meet the probable cause threshold." *United States v. Chavez*, 534 F.3d 1338, 1345 (10th Cir. 2008).

Under the **vertical** collective knowledge doctrine, by contrast, "an arrest or stop is justified when an officer having probable cause or reasonable suspicion instructs another officer to act, **even without communicating all of the information necessary to justify the action**." *Latorre*, 893 F.3d at 753 (emphasis added) (citation omitted). "Of course, the officer who has probable cause may possess that information as a result of communication from other officers. Thus, the 'horizontal' and 'vertical' collective knowledge categories are by no means mutually exclusive." *Chavez*, 534 F.3d at 1345 n.12.

2. Analysis

Defendant asserts that the horizontal collective knowledge doctrine is applicable in this case. Further, Defendant argues that although some officers involved in the narcotics operation were aware of his past participation in drug-related activity, "that

information cannot be used to form the basis of probable cause" because "none of the officers involved communicated the information . . . to the arresting officers." (Doc. # 43 at 3.)

However, the Court disagrees that the horizontal doctrine is applicable to this case. The narcotics operation involved two teams of law enforcement officers: a surveillance team and an arrest team. The officers in the surveillance team recognized Defendant—and were aware of his past drug related activity—and those officers observed the conduct that was the basis of Defendant's detention. After observing the drug transaction, the surveillance team directed the arrest team to detain Defendant.

This Court has already determined that the surveillance team had probable cause to arrest Defendant. Therefore, this is not a case in which "no single officer has sufficient information" to constitute probable cause. *Latorre*, 893 F.3d 753. Rather, this is a case in which "an officer having probable cause . . . instructs another officer to act . . . ." *Id*. Therefore, the vertical collective knowledge doctrine applies, and it was not necessary for the surveillance team to communicate "all of the information necessary to justify the action" to the arrest team. *Id*.

**C.    SEARCH OF DEFENDANT'S CLOTHING SUBSEQUENT TO HIS DETENTION**

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted). Among the exceptions to the warrant requirement is a search incident to a lawful arrest. *Arizona v. Gant*, 556 U.S.

8

332, 338 (2009). The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations. *Id*.

However, a search incident to arrest may only include "the arrestee's person and the area 'within his immediate control'—[i.e.,] the area from within which he might gain possession of a weapon or destructible evidence." *Id*. (citation omitted). Thus, searches incident to arrest are reasonable "in order to remove any weapons [the arrestee] might seek to use" and "in order to prevent [the] concealment or destruction" of evidence. *Id*. (citation omitted). This rule is applicable even when the defendant is restrained. *See, e.g.*, *United States v. Parra*, 2 F.3d 1058, 1066–67 (10th Cir. 1993) (search of 2 pillows valid even though defendant was handcuffed because officers had reasonable belief that weapons could be hidden under pillows and that defendant could have broken free to retrieve them).

With respect to a search of an arrestee's person in particular, the Supreme Court has explained, "[t]he authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect." *Riley v. California*, 573 U.S. 373, 384 (2014) (quoting *United States v. Robinson*, 414 U.S. 218, 235 (1973)).

In the instant case, the Court has already determined that Defendant's detention was supported by probable cause. Additionally, the search that law enforcement conducted subsequent to Defendant's detention was limited to Defendant's person.

9

Thus, the Court need not consider the probability that weapons or evidence would actually be found on Defendant's person—although the Court notes that Defendant's apparent participation in a drug transaction would likely provide an independent justification for the search. As a result, the search constitutes a valid search incident to arrest.[4]

### III. CONCLUSION

Based on the foregoing, Defendant's Motion to Suppress Evidence is DENIED.

DATED: September 16, 2019

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

---

[4] The Court reiterates that it is assuming, *arguendo*, that law enforcement's detention of Defendant constituted an arrest. *See supra* note 1.